



**DANIEL P. GOLDBERGER**
New York Managing Partner
(212) 415-9365
goldberger.dan@dorsey.com

**VIA ECF**                                                May 27, 2025

Hon. Jessica G. L. Clarke
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

      Re:    *Cuebiq Group, LLC v. PaeDae, Inc. et al*, 1:24-cv-07542-JGLC (S.D.N.Y.)

Dear Judge Clarke:

We represent Plaintiff Cuebiq Group, LLC ("Plaintiff") in the above-referenced matter and write jointly with Defendants PaeDae, Inc. and Gimbal, Inc. ("PaeDae," "Gimbal," or "Defendants"), in compliance with Your Honor's Individual Rules and Practices, Rule 4(k), to present a discovery dispute to the Court. The parties met and conferred telephonically on this issue on May 14th and have corresponded since that time to try to resolve the dispute, without success.

***Factual Background***:  In 2023, Defendants sued Cuebiq Inc. (a non-party to this suit, "Inc.") in California (the "California Action"), alleging that Inc. misappropriated Gimbal's trade secrets, breached the License Agreement Beintoo (Cuebiq, Inc.'s predecessor) entered with Defendants, and that a representative of Inc. misrepresented the degree to which Inc. used Defendants' technology.  Defendants' allegations arise from the parties entering a 2014 License Agreement, which allowed Beintoo to access and possess Gimbal's trade secret information, including its research, designs, specifications, code, algorithms, data, techniques, processes, and related information for a limited purpose. Defendants' information was to be used only for the purpose of evaluating the possibility of forming a joint business relationship and potentially furthering the purpose of any resulting written agreement. This License Agreement is subject to license payment obligations for the use of Defendants' technology in Beintoo's solution. Defendants allege in the California Action that Inc. used Gimbal's confidential information to create its competing product, failed to pay license fees for use of Defendants' trade secret information, and misrepresented the extent to which it was using Defendants' trade secret information. *See generally* Exhibit A ¶¶15-16, 31-33, 56-68, 94-110.

After Defendants filed the California Action, Inc. defaulted on its financial obligations under a loan agreement with its lender, Espresso Capital, which in turn foreclosed on Inc.'s assets, and sold the assets to Cuebiq Group, LLC ("Cuebiq Group"), the Plaintiff in this action. Inc., which became insolvent after the foreclosure, defaulted in the California Action. Shortly after Cuebiq



Hon. Jessica G.L. Clarke
May 6, 2025
Page 2

Group acquired Inc.'s assets, Defendants' CEO wrote an email to Espresso Capital, that states "once Paedae secures the default judgment against Cuebiq, Paedae will pursue the damages to which it is entitled against . . . Espresso Capital." Ex. B. Cuebiq Group, the Plaintiff in this case, then filed this action, seeking a declaratory judgment that the software it acquired in the foreclosure sale does not have the trade secrets Defendants allege were incorporated by Inc. into its product offerings.[1] *See* Dkt. 1 at First COA.

***Plaintiff's Position***:  The central issue in this case is whether the software Plaintiff purchased in the foreclosure sale contains the alleged trade secrets at issue in the California Action. To this end, Plaintiff issued a request for Defendants to produce the allegedly misappropriated trade secrets to establish conclusively that they are not in Plaintiff's software or product offerings.

> **REQUEST FOR PRODUCTION NO. 5:** All Documents and Communications concerning the Gimbal Tech,[2] including but not limited to its development and implementation by Gimbal and/or its predecessors.

Ex. C at RFP 5.  Recognizing the relevance of this evidence to Plaintiff's declaratory judgment claims, and asserting no specific confusion about the request, Defendants agreed to produce this information without condition: "PaeDae will conduct a reasonable search to identify non-duplicative documents . . . . and will produce the relevant . . . results of this search." Ex. D at 8-9.

The parties held a meet and confer on May 14th related to, among other things, the production of the Parties' source code. At the meet and confer, Plaintiff proposed a protocol for the production and review of the parties' source code, but Defendants took the position that it would only produce its source code *after* Plaintiff made a production of its source code that could be reviewed by Defendants and their expert. In Defendants' own words memorializing their position set forth at the meet and confer (Ex. E at PDF page 6):

> [S]ource code production should be done in phases to balance the protection of trade secrets with the need for fair discovery. . . . Plaintiff should produce its source code to allow Defendants to determine whether the trade secrets identified were misappropriated and used by Plaintiff. After such identification and review is completed by Defendants, Defendants are willing to discuss the scope of Defendants' source code that is relevant to Plaintiff's claim … and to produce the

---

[1] Plaintiff also seeks a declaratory judgment that it is not the successor to Inc.'s liabilities, a claim which is not directly relevant to the present dispute.

[2] "Gimbal Tech" is defined as: "the technology developed by Gimbal's predecessor that was the subject of the Gimbal License Agreement."  Ex. C ¶14.



Hon. Jessica G.L. Clarke
May 6, 2025
Page 3

same at Defendants' counsel's office.

As set forth below, the Court should issue an order compelling the production of the documents and source code responsive to Plaintiff's RFP 5 without the conditions Defendants seek to unilaterally impose.

First, Defendants' trade secret "protection" concerns are without merit. Plaintiff has drafted and shared with Defendants a proposed protective order that affords special protections for source code, and will produce the Cuebiq Group source code under the protections afforded by that protective order. Defendants offer no reason why its trade secret source code is entitled to more protection than Plaintiff's. Indeed, if Defendants' theory of the dispute between the Parties is correct, it need only produce that which it disclosed to Inc. more than a decade ago, and which Defendants allege is contained Plaintiff's product offerings today (it isn't). If anything, **Plaintiff** should be the concerned party since it is the one exposing its trade secrets to a competitor. Plaintiff will of course strictly adhere to its obligations under the proposed protective order[3] to ensure protection of Defendants' information.

Second, a party cannot unilaterally impose a selective, phased production in the manner proposed by Defendants, as courts in the Second Circuit have repeatedly held. *See, e.g.*, *Graham v. Rider Maint. Corp.*, 1986 U.S. Dist. LEXIS 29166, at *5 (S.D.N.Y. Feb. 19, 1986) (sanctioning non-producing party for producing only edited versions of tape recordings where the unedited tapes were offered "only under certain conditions sought to be unilaterally imposed by [non-producing party]."); *Hakim v. William Backus Hosp.*, No. 3:99CV1143(DJS), 2006 U.S. Dist. LEXIS 45812, at *12 (D. Conn. June 28, 2006) (sanctioning non-producing party because "This court[] . . . did not permit [non-producing party] to unilaterally set conditions upon which materials may be produced, but rather simply ordered that [non-producing party] produce the file . . ."); *Socialist Workers Party v. Attorney Gen. of United States*, 458 F. Supp. 895, 898 (S.D.N.Y. 1978) (rejecting Attorney General's efforts to produce "a unique and essential body of evidence" in a case subject to "the unilateral terms and conditions" imposed by the Attorney General.).

Third, allowing Defendants to delay their identification of their allegedly misappropriated trade secrets until it has reviewed the Cuebiq Group source code is unfair and prejudicial. In the California Action, Gimbal and Paedae alleged that the software that Cuebiq Group acquired contains Gimbal's trade secrets. In this action, in which Plaintiff seeks a declaration that Plaintiff's product offerings contain no technology owned by Defendants, Defendants are refusing to produce the documents and source code of the technology they alleged was misappropriated in the California Action and which is squarely at issue here. If Defendants' allegations are correct, then production will substantiate their claims of misappropriation, so it is not clear why they have refused to produce this information. Without the production of this information, Plaintiff cannot

---

[3] Defendants have had the draft protective order for more than a week without providing counter-edits or comments.



Hon. Jessica G.L. Clarke
May 6, 2025
Page 4

prove its claims, which is likely why Defendants have refused production. In short, assuming Defendants and their Counsel had a good-faith basis to allege misappropriation in the California Action, they should not object to producing that same technology for expert review in this case under the protections afforded through a jointly negotiated protective order.

Finally, Defendants' delayed production provides Plaintiff less time to review this source code and prove its claims in a rapidly narrowing fact discovery window, without substantial justification, and to Plaintiff's significant prejudice. The Court should compel Defendants to produce the allegedly misappropriated trade secrets without further delay, as they originally committed to do.

**Defendants' Position:** Plaintiff has failed to establish why the entirety of PaeDae's source code should be produced for inspection. Under New York and California law, a plaintiff in a trade secret misappropriation case must identify with reasonable particularity the trade secrets it contends have been misappropriated. *See Rocket Pharms., Inc. v. Lexeo Therapeutics, Inc.*, 764 F. Supp. 3d 115, 199 (S.D.N.Y. 2025) ("To show that something constitutes a trade secret, courts within this Circuit have required that the trade secret first be identified with 'reasonable particularity.'"); *see also InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020). Defendants disclosed the trade secrets at issue in their Complaint in the California action which is publicly available and of which Plaintiff is clearly aware. *See* Ex. E at 1 and 6.

Plaintiff fails to distinguish between **the identification of trade secrets** at issue and **the production of all source code** belonging to PaeDae for inspection, which is overboard, unduly burdensome, and is not proportional to the needs of this case. "Plaintiff's position is that [the] parties should [] provide their source code to a third party at the same time for inspection by the other parties' expert." Ex. E at 6. Such request would require PaeDae to collect its entire source code, portions of which are irrelevant, and incur additional costs to have its source code hosted at a third-party facility for review. Further, Plaintiff has not provided any justification for requiring production of source code that PaeDae is currently using, rather than just the trade secret information from the relevant 2014 time period. PaeDae does not need to be currently using the source code to allege trade secret misappropriation and the source code utilized today is not relevant outside of what was misappropriated in 2014.

Plaintiff has no basis and has not cited to a single case supporting its position that it should be entitled to inspect PaeDae's source code when PaeDae is the only party bringing misappropriation allegations. In this lawsuit, Plaintiff is not claiming that PaeDae misappropriated its trade secrets by using them to develop PaeDae software. Instead, Plaintiff is seeking a declaration that Plaintiff has not misappropriated PaeDae's trade secret information. *See* Dkt. No. 1. Given these allegations, Plaintiff has not explained why it needs to review the entirety of PaeDae's source code. PaeDae's position is that the identification of its trade secrets in the California Action is sufficient and proportional to the needs of this case. This notifies Plaintiff regarding the trade secrets at issue in the California Action, which is what Plaintiff's request



Hon. Jessica G.L. Clarke
May 6, 2025
Page 5

ultimately seeks to accomplish. Plaintiff should not be entitled to unbounded access to PaeDae's entire confidential source code absent a clear showing of its relevance to Plaintiff's claims.

Plaintiff's position above mischaracterizes the facts and the record. Plaintiff's contentions that PaeDae "assert[ed] no specific confusion about [Request for Production No. 5]" and "agreed to produce this information without condition" is false. In fact, PaeDae asserted several objections to this request, which PaeDae stood on during the parties' meet and confer and continues to stand on them until this Court rules on this dispute.

Next, Plaintiff's above characterization of the parties' meet and confer is also misleading. Plaintiff contends "Defendants took the position that it would only produce its source code **after** Plaintiff made a production of its source code that could be reviewed by Defendants and their expert." *See supra* Plaintiff's position at 2 (emphasis added). Plaintiff omits important language reflecting what PaeDae's actual position is:

> "Defendants' position is that source code production should be done in phases to balance the protection of trade secrets with the need for fair discovery. **Defendants proposed that after they have identified the trade secrets at issue,** Plaintiff should produce its source code to allow Defendants to determine whether the trade secrets identified were misappropriated and used by Plaintiff. After such identification and review is completed by Defendants, Defendants are willing to discuss the scope of Defendants' source code that is relevant to Plaintiff's claim that Plaintiff did not misappropriate Defendants' trade secrets and to produce the same at Defendants' counsel's office." *See* Ex. E at 6 (emphasis added).

The above language shows PaeDae agreed to identify its trade secrets **before Plaintiff produced its source code** and remained open to discussing what portion of PaeDae's source code, if any, should be produced for inspection.

Finally, Plaintiff's claim of prejudice because of delay also lacks merit. Plaintiff has not identified a reason why its expert needs to inspect PaeDae's source code to support its claims in this lawsuit because one does not exist. To the extent Plaintiff complains of a narrowing discovery window, this is a problem Plaintiff created for itself. Plaintiff is the party who chose to file this lawsuit in S.D.N.Y., a jurisdiction known for its efficient case management and expedited dockets, despite acknowledging the related nature of the first-filed California Action. If Plaintiff wanted more time to conduct discovery on its claims, it should have intervened in the first-filed California Action, which tends to offer longer timelines for discovery. Rather than do so, Plaintiff filed its declaratory judgment claims in its preferred jurisdiction, which is known for short discovery windows and thus cannot now claim prejudice after having done so.

For the foregoing reasons, PaeDae asks this Court to deny Plaintiff's request to compel the production of PaeDae's source code.



Hon. Jessica G.L. Clarke
May 6, 2025
Page 6

      The Parties very much appreciate the Court's attention to this matter.

      Respectfully submitted,

*/s/ Daniel P. Goldberger*

Daniel P. Goldberger

*/s/ Ricardo J. Bonilla*

Ricardo J. Bonilla

cc: All counsel of record (via ECF)

---

The Court has carefully reviewed the parties' joint letter and grants Plaintiff's request with the following modifications. The parties are directed to confer regarding a stipulated protective order and provide that proposed order for the Court's review by **June 9, 2025**. The Court also directs the parties to confer and determine a date certain to simultaneously exchange the relevant source code at issue. In other words, on the agreed upon date, Plaintiff shall produce its applicable source code to Defendants, and Defendants shall produce the source code reflecting the trade secrets Defendants allege Cuebiq Inc. misappropriated to Plaintiff. The exchange shall occur within a reasonable time after the Court's entry of the protective order, and the exchanged information shall be subject to the protective order.

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge

Dated: May 29, 2025
      New York, New York