UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CUEBIQ GROUP, LLC,

                                    Plaintiff,

                    -against-

PAEDAE, INC, d/b/a GIMBAL, and operating as
INFILLION, and GIMBAL, INC.,

                                    Defendants.

24-CV-7542 (JGLC)

**<u>OPINION AND ORDER</u>**

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff Cuebiq Group, LLC brings this action seeking declaratory judgment related to Plaintiff's use of technology acquired from Cuebiq, Inc. Defendants PaeDae, Inc. d/b/a/ Gimbal and operating as Infillion, and Gimbal, Inc. now move to dismiss this action pursuant to the first-filed rule. The Court first determines that because the present action involves similar parties, parties with the same interests, and substantially similar issues as the previously-filed action in the Southern District of California, the first-filed rule applies. The Court then considers whether any special circumstances exceptions apply and finds that none do. Lastly, the Court engages in a balance of convenience analysis and finds that the relevant factors do not favor keeping the action in the Southern District of New York. Therefore, the balance of convenience exception to the first-filed rule does not apply. Accordingly, Defendants' motion is GRANTED, although the Court declines to dismiss the action in its entirety. Instead, the action is transferred to the first-filed district, the Southern District of California.

# BACKGROUND

## I.    Facts

The following facts are taken from the Complaint and presumed to be true for the purposes of this motion. *See Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 296 n.1 (2d Cir. 2003).

### A.  The Parties and CBQ Tech

Plaintiff Cuebiq Group, LLC ("Plaintiff" or "CBQ") is the exclusive licensee of intellectual property that uses smartphone locations to collect the coordinates of where the device is used (the "CBQ Tech"). *See* ECF No. 1 ("Compl.")[1] ¶ 1. Defendant PaeDae Inc. ("PaeDae") is a corporation that has purchased products and services from another entity called Cuebiq Inc. ("Cuebiq"). ¶¶ 5, 22, 30. Defendant Gimbal Inc. ("Gimbal") is a wholly owned subsidiary of PaeDae. ¶ 6.

Beintoo S.p.A. ("Beintoo") developed the CBQ Tech. ¶ 10. Beintoo relied partially on the CBQ Tech in one business unit, BeClub, which focused on loyalty and engagement applications. *Id*. Beintoo shut down BeClub at the end of 2014. ¶ 11. In 2014, Beintoo entered into a license agreement with Defendant Gimbal to use Defendant Gimbal's technology (the "Gimbal Tech") to improve the CBQ Tech. ¶ 14. Beintoo claimed that the CBQ Tech and the Gimbal Tech had different functions and utilized different technologies. ¶ 15. The Gimbal Tech identifies locations by communicating via Bluetooth, whereas the CBQ Tech identifies locations by collecting location data via GPS. ¶¶ 16–17. After entering the license agreement, Beintoo did not use the Gimbal Tech in its products. ¶ 19.

---

[1] All ¶ references herein refer to the Complaint at ECF No. 1 unless otherwise noted.

In 2016, Beintoo created a subsidiary company, Cuebiq, and a separate entity, Cuebiq

S.p.A. ("Cuebiq Sub"), to which it assigned the CBQ Tech. ¶ 22. Beintoo then transferred

ownership of Cuebiq Sub to Cuebiq, rendering Cuebiq Sub a wholly owned subsidiary of

Cuebiq. *Id*. As part of this process, Cuebiq Sub entered into a license agreement with Cuebiq. ¶

23. The agreement granted Cuebiq an exclusive, non-transferable, sublicensable, worldwide

license to the CBQ Tech. *Id*. Cuebiq's product offerings incorporated the CBQ Tech, but did not

incorporate the Gimbal Tech. ¶¶ 24–25.

In November of 2016, Defendants PaeDae and Gimbal (collectively, "Defendants"),

began purchasing products and services from Cuebiq, including those that incorporated the CBQ

Tech. ¶ 30. Defendants did not allege that the CBQ Tech infringed Gimbal's intellectual property

during the period in which it had access to Cuebiq's products. *Id*. In December of 2016, PaeDae

acquired Gimbal. ¶ 27. After the acquisition, a representative of Defendant Gimbal asked

Cuebiq's CEO if Cuebiq had incorporated any Gimbal Tech into its products. ¶ 28. In response,

Cuebiq's CEO confirmed that Cuebiq had not incorporated any of the Gimbal Tech into their

products. ¶ 29.

### B.  Cuebiq's Potential Sale of Business

In 2021, Cuebiq considered selling a portion of its business that relied on and

incorporated the CBQ Tech. ¶ 31. The underlying intellectual property (the CBQ Tech), however,

was not for sale. *Id.*

On September 21, 2021, Defendants, considering purchasing a portion of Cuebiq's

business, conducted diligence for the sale. ¶ 32. Around October 15, 2021, in a meeting between

the parties, Defendants alleged that CBQ Tech misappropriated the Gimbal Tech. ¶ 33. Shortly

thereafter, on November 12, 2021, Defendants' lawyers sent an allegedly vague letter to Cuebiq

accusing Cuebiq of misappropriating Defendants' intellectual property. ¶ 35. Despite having

access to Cuebiq's products and offerings in November of 2016, Defendant made no allegation of misappropriation until 2021. ¶ 37. By the end of October 2021, Cuebiq identified a potential buyer that was not Gimbal. ¶ 34. However, that deal fell through due to market conditions and ultimately, Cuebiq did not sell any portion of its business. ¶ 39.

### C.  Cuebiq Acquires Outside Financing and Defaults on the Loan

Beginning in 2020, Cuebiq sought outside financing for growth and working capital. ¶ 40. To that end, in 2021, Cuebiq entered into a loan agreement (the "Loan Agreement") as a borrower with Espresso Capital Ltd. and one of its funds (collectively, "Espresso") as a lender. *Id.* In the Loan Agreement, Cuebiq pledged all of its assets, including the CBQ Tech, as collateral. ¶¶ 40–41. In the event Cuebiq defaulted on the Loan Agreement, Cuebiq's failure would allow Espresso to pursue several enumerated remedies, including foreclosure. ¶¶ 42–43.

In June 2022, Cuebiq breached various financial covenants of the Loan Agreement with Espresso and its separate loan agreement with Silicon Valley Bank. ¶ 44. Cuebiq was unable to remedy the breach, so Espresso, Silicon Valley Bank, and Cuebiq renegotiated various terms of their agreements. *Id.* As a result of their negotiations, Espresso agreed to forbear from any enforcement actions and amended the financial covenants ("Amended Loan Agreement"). *Id.* However, on April 30, 2023, Cuebiq breached the Amended Loan Agreement and did not have the financial resources to cure the default. ¶ 46.

### D.  Cuebiq Is Sold to CBQ

Because Cuebiq was unable to cure the default, in June of 2023, Espresso foreclosed on the collateral pledged by Cuebiq to secure the loan through a private foreclosure sale. ¶ 46. At the foreclosure sale, Espresso Special Acquisition LLC purchased Cuebiq by executing a loan and security agreement with a principal balance of $15,000,000 in favor of Espresso. ¶¶ 47–48. Espresso Special Acquisition LLC did not assume any of the obligations under the Loan

Agreement between Cuebiq and Espresso. ¶ 48. Espresso Special Acquisition, LLC has since been renamed Cuebiq Group, LLC ("CBQ"). ¶ 47. There is no overlap in the ownership of Cuebiq and Plaintiff CBQ. ¶ 49. After the acquisition, CBQ began to sell Cuebiq's products, including products that incorporated the CBQ Tech. ¶ 50.

## II.     The California Action

On February 21, 2023, PaeDae and Gimbal filed an action (the "California Action") against Cuebiq in the Southern District of California ("SDCA"). *See PaeDae, Inc. d/b/a Gimbal, Gimbal, Inc. v. Cuebiq, Inc.*, No. 23-CV-335 (DEB), ECF No. 1 (S.D. Cal. Feb. 21, 2023) ("CA Action Compl."). On May 8, 2023, Cuebiq moved to dismiss the California Action. *Id.* at ECF No. 21. On March 27, 2024, the Court denied the motion. *Id.* at ECF No. 26. On April 11, 2024, Cuebiq informed the court that it had ceased operations, had no assets, and did not intend to defend the lawsuit. *Id.* at ECF No. 29. PaeDae and Gimbal sought entry of default by the clerk on April 29, 2024. *Id.* at ECF No. 31. The Clerk entered default on April 30, 2024. *Id.* at ECF No. 32. PaeDae and Gimbal sought default judgment against Cuebiq on May 30, 2024. *Id.* at ECF No. 35.

The SDCA court denied PaeDae and Gimbal's motion for default judgment on October 31, 2024 because they failed to provide a proposed judgment specifying the type and amount of relief sought. *Id.* at ECF No. 37 at 4. After nothing further happened in the case, on May 1, 2025, the Court ordered PaeDae and Gimbal to show cause as to why the action should not be dismissed for failure to prosecute. *Id.* at ECF No. 38. PaeDae and Gimbal responded that they have not taken further action in that litigation because CBQ brought suit against PaeDae and Gimbal in New York and they have thus "been involved in ongoing proceedings and discovery, with a related entity, in litigation that directly impacts th[e] SDCA Action" because "the SDNY

5

Action is essentially identical" to the one in SDCA. *Id.* at ECF No. 39-1 ¶¶ 2, 5. They stated that once this Court rules on the instant motion to dismiss pursuant to the first-filed rule, they intend to proceed in the California Action "either by filing an amended motion for default judgment with additional information for [the California] Court, or by taking the necessary steps to address any potential claims CBQ may seek to add in this matter, including if the SDNY Action is transferred to this Court to be consolidated with th[e] SDCA Action." *Id.* at ECF No. 39-1 ¶ 23.

## III.   The Present Action

Plaintiff filed the Complaint in the present action (the "Action" or the "New York Action," together with the California Action, the "Actions") against Defendants on October 4, 2024. ECF No. 1. On October 28, 2024, Defendants moved for an extension of time to answer or otherwise respond to the Complaint, which the Court granted. ECF Nos. 12, 13. Thereafter, on December 2, 2024, Defendants moved to dismiss this Action under the first-filed rule. ECF No. 14. On December 9, 2024, Plaintiff requested an extension of time to respond to the motion, which the Court granted. ECF Nos. 15, 16. Plaintiff opposed the motion to dismiss on January 17, 2025. ECF No. 18 ("Opp."). On January 24, 2025, Defendants sought an extension to reply to Plaintiff's opposition, which the Court granted. ECF Nos. 20, 23. Defendants filed their reply on February 7, 2025. ECF No. 26 ("Reply").

## DISCUSSION

"Under the first-filed doctrine, when competing lawsuits have been filed in different courts relating to the same controversy, ordinarily, 'the first suit should have priority,' and the later-filed suit should be dismissed." *Oleg Cassini, Inc. v. Serta, Inc.*, No. 11-CV-8751 (PAE), 2012 WL 844284, at *3 (S.D.N.Y. Mar. 13, 2012) (quoting *D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 106 (2d Cir.2006)); *see also Dornoch Ltd. ex rel. Underwriting Members of Lloyd's*

*Syndicate 1209 v. PBM Holdings, Inc.*, 666 F. Supp. 2d 366, 369 (S.D.N.Y. 2009). The rule exists to foster judicial economy by avoiding duplicative litigation, and also to protect parties from having to litigate the same issue in multiple venues. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000); *Byron v. Genovese Drug Stores, Inc.,* No. 10-CV-03313 (JBW), 2011 WL 4962499, at *2 (E.D.N.Y. Oct. 14, 2011). "For the rule to apply, the claims, parties, and available relief must not significantly differ between the actions." *Serta, Inc.,* 2012 WL 844284 at *3 (internal citation and quotation marks omitted). The issues, however, do not need to be identical, nor do the named parties need not be entirely the same so long as they represent the same interests. *Id.*; *see also Pippins v. KPMG LLP*, No. 11-CV-377 (CM), 2011 WL 1143010, at *2 (S.D.N.Y. Mar. 21, 2011) ("The rule does not require that the claims present the exact issue, only that the cases be related.").

The Second Circuit has "recognized only two exceptions to the first-filed rule: (1) where the balance of convenience favors the second-filed action, and (2) where special circumstances warrant giving priority to the second suit." *Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) (cleaned up). If the first-filed rule applies, a district court "may dismiss the second-filed case, transfer it to the first-filed district, or stay the second case pending resolution of the first-filed case." *Santana v. Cavalry Portfolio Srvs., LLC*, No. 19-CV-3773 (PAE), 2019 WL 6173672, at *5 (S.D.N.Y. Nov. 19, 2019).

## I.    The First-Filed Rule Applies

The Court first analyzes whether the first-filed rule applies and finds that it does because both Actions involve similar parties, parties with the same interests, and substantially similar issues. The Court next considers whether any special circumstances apply as an exception to the

first-filed rule and finds that none do. Accordingly, the Court then proceeds with the balances of the conveniences analysis, concluding that it does not overcome the first-filed rule.

### A. The New York Action Involves Similar Parties and the Same Interests as the California Action

"Where essentially the same lawsuit involving the same parties and the same issues is pending in two different federal courts, the first-filed rule creates a presumption that the case filed earliest will take priority." *Emp. Ins. of Wausau v. Fox Ent. Grp.*, *Inc.*, 522 F.3d 271, 274 (2d Cir. 2008) (cleaned up). The first-filed rule also applies when the Court finds that two actions involve substantially similar parties and issues. *See, e.g.*, *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 116–17 (2d Cir. 1992); *see also Serta, Inc.*, 2012 WL 844284, at *3 ("[T]he issues need not be identical, and the named parties need not be entirely the same provided that they represent the same interests."). Parties represent the same interests when there is substantial overlap between them. *See, e.g., Serta. Inc.*, 2012 WL 844284, at *4 (finding that parties represent the same interests because, even though all parties were not named in the first-filed action, either lawsuit would resolve the parties' interests because the parties were related through their product offerings). Two actions involve similar issues when there are "sufficient overlapping factual and legal issues" that would be supported by the same evidence. *See MasterCard International, Inc. v. Lexcel Solutions, Inc.,* No. 3-CV-7157 (WHP), 2004 WL 1368299, at *8 (S.D.N.Y. June 16, 2004).

This Action involves similar parties as the California Action and involves parties with the same interests. Specifically, Plaintiffs in the California Action, Paedae and Gimbal, are the same parties as the Defendants in the New York Action. ¶¶ 5–6, 51. Additionally, Plaintiff CBQ in the New York Action represents the same interests as defendant Cuebiq in the California Action. Although Cuebiq has stopped defending the first-filed action after its counsel withdrew and is no

longer operational, CBQ and Cuebiq both have the same interest in the courts' rulings on whether the CBQ Tech misappropriates the Gimbal Tech.

Plaintiff's claim that "[t]here is no overlap in ownership of Cuebiq and CBQ" and "CBQ is not a successor to Cuebiq, and it did not assume any of Cuebiq's liabilities in the foreclosure sale" does not diminish the similarities between the parties and their identical interests. ¶¶ 49, 58. Indeed, Plaintiff purchased all of Cuebiq's assets, including the CBQ Tech at issue here, and began selling products that incorporated that technology. ¶¶ 48, 50.

Furthermore, an overlap in ownership is not determinative of whether the parties represent the same interests. Rather, district courts have found that parties represent the same interests—even with different ownership—in circumstances similar to this one. For example, in *Oleg Cassini, Inc. v. Serta, Inc.*, plaintiff brought suit in New York alleging that defendants' sale of particular Serta mattresses infringed upon Plaintiff's trademarks. 2012 WL 844284, at *4. At the time, there was another pending declaratory judgment action between the parties in Illinois. *Id.* The New York court held that, despite new defendants being added in the second-filed action, the parties still represented the same interests because one new defendant was a licensee of Serta and the only conduct at issue with respect to another new defendant was its sale of Serta mattresses. *Id.* As such, the court found that "in practice, either lawsuit w[ould] resolve those parties' interests." *Id.*

The court reached a similar conclusion in *Spotless Enterprises Inc. v. The Accessory Corp.*, 415 F. Supp.2d 203, 206 (E.D.N.Y. 2006). There, the Court found that there was substantial overlap where plaintiff in the first-filed action and plaintiff in the second-filed action both held patents regarding relevant products. As in *Serta Inc.* and *Spotless Enterprises Inc.*, both Actions seek to resolve a central issue: whether CBQ Tech misappropriates Gimbal Tech.

**B.  The New York Action Involves Substantially Similar Issues as the California Action**

The California Action and this Action involve substantially similar issues because the claims arise out of identical facts. *See, e.g.*, *Serta, Inc.,* 2012 WL 844284, at *4 (holding that two cases have overwhelmingly similar issues because, *inter alia*, the cases arose "out of the identical facts and the same communications between the same parties"). The plaintiffs in both Actions allege that Beintoo created CBQ Tech, entered into a licensing agreement with Gimbal, and launched Cuebiq, which relied upon CBQ Tech. ¶¶ 10–39; CA Action Compl. ¶¶ 12–64. The relevant evidence in both Actions will likely include testimony about the license agreement between Cuebiq and Defendants and the creation of CBQ Tech. And, both Actions will center on whether or not CBQ Tech misappropriates the Gimbal Tech.

Plaintiff does not allege any additional facts that are material to the misappropriation or infringement claims beyond those alleged in the California Complaint. The additional facts in Plaintiff's Complaint describe the foreclosure sale of Cuebiq and the transfer of Cuebiq's assets to Plaintiff. ¶¶ 40–59. These facts are not material to whether CBQ Tech misappropriated or infringed on Gimbal Tech because the foreclosure sale occurred after the CBQ Tech was created.

Furthermore, the claims in both Actions are substantially similar despite involving different requests for relief. *See Serta, Inc.*, 2012 WL 844284, at *4 (finding that two cases involve similar claims because both sought to address an issue of trademark infringement, one through declaratory judgment and the other through a finding of infringement). Plaintiff "seeks declaratory judgment that neither the CBQ Tech nor any other technology in its product offerings violates or infringes upon any intellectual property owned by Defendants." ¶ 1. The plaintiffs in the California Action seek a finding that the defendant in the that action "misappropriated their trade secrets" through CBQ Tech. ¶ 2. The two Actions are "symmetrical" because both cases

seek to resolve the issue of whether CBQ Tech has misappropriated or infringed on the Gimbal Tech, with Plaintiff "seeking a declaration in [New York] that it has not, and [the plaintiffs in the California Action] seeking a finding in [California] that it has." *See Serta, Inc.,* 2012 WL 844284, at *4. The Actions clearly present the same issue.

### C.  The Special Circumstances Exception Does Not Apply

The Court considers whether a special circumstances exception applies to the first-filed rule and finds that it does not. "Special circumstances are present when the first suit was filed as a result of forum shopping or when the first suit was a result of 'anticipatory filing.'" *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 390 (S.D.N.Y. 2014) (quoting *Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp. 2d 505, 511 (S.D.N.Y. 2004)). "An improper anticipatory filing is 'one made under the apparent threat of a presumed adversary filing the mirror image of that suit' in another court." *Pharm. Res., Inc. v. Alpharma USPD Inc.*, No. 2-CV-1015 (LMM), 2002 WL 987299, at *3 (S.D.N.Y. May 13, 2002) (quoting *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp 1144, 1150 (S.D.N.Y. 1995)). To find a special circumstance exception based on forum shopping, "the first-filing plaintiff must engage in some manipulative or deceptive behavior, or the ties between the litigation and the first forum must be so tenuous or de minimis that a full 'balance of convenience' analysis would not be necessary to determine that the second forum is more appropriate than the first." *Emps. Ins. of Wausau*, 522 F.3d at 276.

Here, the plaintiffs in the first-filed action selected SDCA as a forum. ¶ 51. There is nothing in the record before the Court to suggest that it was an anticipatory filing. There was no threat of a presumed adversary filing. *See Pharm. Res., Inc.*, 2002 WL 987299, at *3 (finding that the plaintiff in the first-filed action "did not receive notice of suit prior to filing" the second-filed action because the communications between the parties "nowhere indicate [the defendant's]

intent to initiate litigation in the near future"). Furthermore, CBQ makes no allegation, and the

Court finds no indication, that plaintiffs in the California Action engaged in manipulative or

deceptive behavior in filing the first action in California. Accordingly, the special circumstances

exception does not apply.

### D.  The Balance of Convenience Does Not Overcome the First-Filed Rule[2]

Because the Court finds that the special circumstances exception does not apply, the

Court proceeds to analyze whether the balance of convenience overcomes the first-filed rule.

*Emps. Ins. of Wausau*, 522 F.3d at 276 ("Where special circumstances are not present, a

balancing of the conveniences is necessary."). The relevant considerations for the balance of

convenience analysis "are essentially the same as those considered in connection with motions to

transfer venue pursuant to 28 U.S.C. [Section] 1404(a)." *Id*. at 275. The relevant factors include

"(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant

documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5)

the locus of operative facts, (6) the availability of process to compel the attendance of unwilling

witnesses, and (7) the relative means of the parties." *Id.* "There is no rigid formula for balancing

these factors and no single one of them is determinative." *Reliance Ins. Co. v. Six Star, Inc.,* 155

F. Supp.2d 49, 57 (S.D.N.Y. 2001). "Balancing factors of convenience is essentially an equitable

task. For that reason, an 'ample degree of discretion' is afforded to the district courts in

determining a suitable forum." *First City Nat. Bank & Tr. Co. v. Simmons*, 878 F.2d 76, 80 (2d

Cir. 1989).

---

[2] Defendants argue that the Court should conclude that Plaintiff cannot meet its burden of
demonstrating that the balance of conveniences weighs in favor of this forum because Plaintiff
failed to supply an affidavit in opposition of this motion. *See* Reply at 6. The Court disagrees.
Plaintiff has submitted a detailed memorandum, which includes citations to the record and
factual support for its allegations regarding the balance of convenience factors. And in any event,
the Court concludes, for the reasons stated herein, that these factors weigh in favor of SDCA.

First, the Court considers plaintiff's choice of forum and finds that this factor favors the California Action. This is because, in cases in which there is no improper anticipatory filing, as is the case here, "the plaintiff in the first-filed action[] is afforded the choice of forum." *Pharm. Res., Inc.*, 2002 WL 987299, at *5. Accordingly, Paedae and Gimbal, plaintiffs in the California Action, are afforded choice of forum.

Second, the Court considers the convenience of the witnesses. "[T]he convenience of witnesses [is] the single most important factor in the balance [of conveniences]." *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 183 (S.D.N.Y. 1995); *see also Transatlantic Reinsurance Co. v. Cont'l Ins. Co.*, No. 3-CV-227 (CBM), 2003 WL 22743829, at *4 (S.D.N.Y. Nov. 20, 2003) ("The most significant factor to be decided on a motion to transfer venue is the convenience of party and non-party witnesses."). "When assessing the convenience of witnesses, . . . the court must qualitatively evaluate the materiality of the testimony that the witnesses may provide." *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp.2d 282, 286 (S.D.N.Y. 2004). The Court is unable to do so here, where Plaintiff listed only two inconvenienced witnesses (whose testimony they failed to describe), and failed to provide a list of any other potential witnesses or their anticipated testimony. *See* Opp. at 14–15. Furthermore, Plaintiff's argument that it is easier for certain out-of-state and out-of-country witnesses to travel to New York than California is also insufficient to support the convenience of the witnesses factor. *See, e.g.*, *Coker v. Bank of Am.*, 984 F. Supp. 757, 765–66 (S.D.N.Y. 1997) (finding that the convenience of witnesses weighs in favor of the first-filed forum because "if the Court were to accept [the plaintiff's] argument [that he would be inconvenienced by flights from Nigeria to New Mexico rather than New York], the federal courts in New York . . . would become the courts of convenience for most diversity cases involving foreign nationals"). Accordingly, Plaintiff has failed to overcome the presumption in

favor of the first-filed forum with respect to the convenience of the witnesses. *See Reliance Ins. Co.*, 155 F. Supp. 2d at 58–59.

Third, the Court considers the location of relevant documents and finds that this factor is neutral. Plaintiff claims that "relevant documents will more likely be located in this District" because both parties are located in New York. Opp. at 15. However, "the location of documents is entitled to little weight unless the movant makes a detailed showing of the burden it would incur absent transfer." *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 324 F. Supp.3d 421, 441 (S.D.N.Y. 2018). Furthermore, "[t]he location of records is 'not a compelling consideration when records are easily portable.'" *Transatlantic Reinsurance Co*, 2003 WL 22743829, at *5. Here, Plaintiff failed to show that the necessary documentary evidence is not easily portable, and assuming that all relevant documents can be transmitted electronically, this factor is neutral. *See, e.g., id.* (finding that the location of documents was neutral because the defendant "failed to make a detailed showing that the relevant records [were] not easily portable or that it would incur some other burden absent transfer"); *Age Grp. Ltd. v. Regal Logistics, Corp.*, No. 06-CV-4328 (PKL), 2007 WL 2274024, at *5 (S.D.N.Y. Aug. 8, 2007) ("The location of documents is not a particularly persuasive factor absent a showing that such documents are especially difficult to transport . . . .").

Fourth, the Court considers the convenience of the parties and finds that it weighs in favor of the New York Action. The relevant agreement between Gimbal and Cuebiq contains a forum-selection clause which designates SDCA as the exclusive jurisdiction to resolve disputes between the parties in the California Action. Reply at 8. Therefore, it is unquestionable that SDCA is convenient for Defendants. *See Reliance Ins. Co.*, 155 F. Supp.2d at 58. ("A forum selection clause is determinative of the convenience of the parties."). However, as Plaintiff

14

highlights, all parties in this Action are located in New York. Opp. at 15; *see also* ¶¶ 4–6. Accordingly, convenience to the parties weighs in favor of the New York Action. *See Michael Miller Fabrics, LLC v. Studio Imports Ltd., Inc.*, No. 12-CV-3858 (KMW) (JLC), 2012 WL 2065294, at *6 (S.D.N.Y. June 7, 2012) (finding that the convenience of the parties slightly favored New York where one party's only office was in New York and the other party, though located in another jurisdiction, had its only United States sales center and showroom in New York).

Fifth, the Court considers the locus of operative facts and finds that the factor is neutral. "The locus of operative facts is a primary factor" in the balance of convenience analysis. *Starr Indem. & Liab. Co.*, 324 F. Supp.3d at 435 (internal citation omitted). "In determining the locus of operative facts, a court must look to the site of events from which the claim arises." *Transatlantic Reinsurance Co*, 2003 WL 22743829, at *5 (cleaned up). Here, the claim arises out of the creation and use of CBQ Tech in both forums. *See* ¶ 33. Although both parties have their principal places of business in New York, Plaintiff invokes the state laws of both forums. ¶¶ 4–6, 63. Specifically, Plaintiff seeks a declaratory judgment that it has not infringed upon the Gimbal Tech under the California Uniform Trade Secrets Act and New York common law—making clear that California is relevant to this action. ¶ 63. Accordingly, the Court finds that the locus of operative facts is also neutral because the case is connected to both New York and California. *Cf. Illinois Union Ins. Co. v. NRG Energy, Inc.*, No. 10-CV-5743 (BSJ), 2010 WL 5187749, at *2 (S.D.N.Y. Dec. 6, 2010) (finding that the locus of operative facts had no connection to New York where the plaintiff was seeking "a declaratory judgment that it [was] not required to defend or indemnify [the defendant] for alleged violations of [federal law], and corresponding provisions of [the first-filed forum's state law]") (cleaned up).

Sixth, the Court considers the availability of process to compel unwilling witnesses. The Court finds that this factor is neutral. This is because this factor carries little weight if the movant does not show "persuasively that compulsory service of process for third party witnesses is likely to be more problematic in either forum." *Everest Cap. Ltd. v. Everest Funds Mgmt., L.L.C.*, 178 F. Supp. 2d 459, 467 (S.D.N.Y. 2002). Here, Plaintiff has not identified any witnesses who will be unwilling to appear in California. Opp. at 16; *see, e.g., Transatlantic Reinsurance Co*, 2003 WL 22743829, at \*5 (finding that the availability of process to compel attendance of unwilling witnesses is neutral because the plaintiff did not make a showing or suggestion that relevant witnesses would be unwilling to appear).

Seventh, the Court considers the relative means of the parties. Plaintiff claims that Defendants are "well established" and "well-funded" and Plaintiff "is a small company with limited resources" that "would be more likely to face adverse financial consequences if it were forced to litigate in California instead of its home jurisdiction, New York." Opp. at 16. "'Where a disparity exists between the means of the parties, a court may consider the relative means of the parties in determining venue.'" *Everest Cap., Ltd.*, 178 F. Supp.2d at 467 (quoting *Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000)). However, this factor "has rarely been a dispositive reason to grant or deny a transfer motion; it is just one more factor to consider," and the Court is unpersuaded that the relative means of the parties warrants maintaining this second-filed action in this district. *Thomas Am. Corp. v. Fitzgerald*, No. 94-CV-262 (CBM), 1994 WL 440935, at \*5 (S.D.N.Y. Aug. 11, 1994). This is because both parties are corporations, and neither party appears to be without resources to pursue this litigation. *See id.* (finding that the relative means of the parties was not dispositive on the issue of transfer because the defendant had a substantial annual income and was not indigent, even though the plaintiff corporation's

assets were greater); *Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328, 331 (S.D.N.Y. 1998)

("Although courts can consider the relative means of parties, this factor is not entitled to great

weight where plaintiff and defendant are both corporations."); Opp. at 16 ("CBQ is not without

resources to pursue this litigation . . . [and] Defendants are . . . well-funded. . . . "); *see also*

*Arrow Elecs., Inc. v. Ducommun Inc.,* 724 F. Supp. 264, 266 (S.D.N.Y. 1989) ("While plaintiff is

a substantially larger corporation, defendant has made no showing that defending this action in

this District would be unduly burdensome.").

      For the foregoing reasons, the Court finds that the balance of convenience exception does

not warrant deviation from the first-filed rule. The relevant factors do not overwhelmingly

support litigation in New York. Accordingly, the presumption in favor of the first-filed action

remains undisturbed. *See, e.g.*, *Clean Vehicle Sols. Am. LLC v. Carrollton Exempted Vill. Sch.*

*Dist. Bd. of Educ.*, No. 15-CV-1503 (VB), 2015 WL 5459852, at *6 (S.D.N.Y. Sept. 2, 2015)

(denying a motion to dismiss and declining to apply the balance of convenience exception to the

first-filed rule because the convenience of witnesses, location of documents, convenience of

parties, availability of process, and relative means were "at best, neutral"); *Starr Indem. & Liab.*

*Co.*, 324 F. Supp.3d at 443 (denying a motion to transfer and declining to apply the balance of

convenience exception to the first-filed rule because plaintiff's choice of forum and locus of

operative facts favored the present forum, but convenience of the parties, availability of process,

relative means, and location of documents were neutral); *Granite State Ins. Co. v. KM Tactical,*

*LLC*, No. 23-CV-7769 (ALC) (GS), 2024 WL 4326936, at *7 (S.D.N.Y. Sept. 27, 2024)

(declining to apply the balance of convenience exception to the first-filed rule because, *inter alia*,

the convenience of the parties and witnesses were neutral); *Schnabel v. Ramsey Quantitative*

*Sys., Inc.*, 322 F. Supp. 2d 505, 520 (S.D.N.Y. 2004) (denying a motion to transfer or dismiss and

declining to apply the balance of convenience exception to the first-filed rule because, *inter alia*, locus of operative fact, convenience of the parties, and location of documents were neutral).

## II.      A Transfer of the Case Is Warranted

"Where the first-filed rule applies, a court may dismiss the second-filed case, transfer it to the first-filed district, or stay the second case pending resolution of the first-filed case." *Santana v. Cavalry Portfolio Servs., LLC*, No. 19-CV-3773 (PAE), 2019 WL 6173672, at *5 (S.D.N.Y. Nov. 19, 2019). "In determining which remedy is proper, a court must consider the goals of the doctrine—to 'avoid duplication of judicial effort ... and eliminate the risk of inconsistent adjudication.'" *Id.* (quoting *Regions Bank v. Wieder & Mastroianni, P.C.*, 170 F. Supp. 2d 436, 439 (S.D.N.Y. 2001)). Plaintiff requests, based on the Court's finding that the first-filed rule applies, that the New York Action either be transferred to SDCA or stayed until a final judgment is issued in the California Action. Opp. at 18. Defendant does not object to either course of action. Because Cuebiq does not have the means to defend itself in the California Action, *see* ¶ 11, the Court determines that dismissing this case in its entirety could lead to an unjust result. Instead, the Court determines that "[i]n light of the application of the first-filed rule and based upon the totality of the circumstances, transfer is appropriate" here. *Michel v. Petco Animal Supplies Stores, Inc.*, 404 F. Supp. 3d 685, 691 (E.D.N.Y. 2017). This transfer will meet the goals of the first-filed rule by preventing against inconsistent results, promoting judicial efficiency, and allowing the parties to litigate in one place. *See Santana*, 2019 WL 6173672, at *6 ("[T]he doctrine's goals [include] achieving fairness and comprehensive disposition of litigation while avoiding inconsistent adjudications and duplication of judicial effort and other inefficiencies.").

**CONCLUSION**

For the reasons stated herein, Defendants' motion to dismiss pursuant to the first-filed rule is GRANTED, and the action shall be transferred to the United States District Court for the Southern District of California. The Clerk of Court is respectfully requested to terminate ECF No. 14 and to transfer the case.

Dated: August 21, 2025
      New York, New York

                                      SO ORDERED.

                                      JESSICA G. L. CLARKE
                                      United States District Judge